**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2022 IL App (3d) 210518-U

Order filed November 18, 2022

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2022

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Petition for Administrative Review |
| Complainant-Appellee, | ) ) | |
| v. | ) ) | |
| IRONHUSTLER EXCAVATING, INC., an Illinois corporation, | ) ) ) | Appeal No. 3-21-0518 Case No. PCB-2020-16 |
| Respondent-Appellant, | ) ) ) | |
| and | ) ) | |
| RIVER CITY CONSTRUCTION, LLC, an Illinois limited liability company, and VENOVICH CONSTRUCTION CO., an Illinois corporation, | ) ) ) ) ) | |
| Respondents. | ) ) | |

_____

PRESIDING JUSTICE O'BRIEN delivered the judgment of the court.
Justices Daugherity and Peterson concurred in the judgment.

_____

**ORDER**

¶ 1    *Held*:   Administrative agency did not err in finding respondent liable for violating environmental regulations and in imposing an $80,000 penalty.

¶ 2     Respondent IronHustler Excavating, Inc. (IronHustler) was cited by the Illinois Pollution Control Board (Board) for unlawfully dumping construction and demolition debris at an unpermitted site. The Board granted summary judgment to the State, as represented by the attorney general, in an action instituted by the Illinois Environmental Protection Agency (IEPA) against IronHustler, River City Construction, LLC (River City) and Venovich Construction Company. The Board found that IronHustler and River City violated various provisions of the Illinois Environmental Protection Act (Act) (415 ILCS 5/1 *et seq.* (West 2018)), determined penalties were warranted, and assessed a penalty of $80,000 against IronHustler and $35,000 against River City. IronHustler appealed the order and opinion of the Board with a direct appeal to this court. River City failed to timely seek review in this court and this court denied its motion to file a late petition for review. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4     Respondent IronHustler was hired as a subcontractor by respondent general contractor River City to handle demolition, removal and disposal of portions of a high school in Delevan, Illinois, at which River City was constructing a new wing. IronHustler transported 208 semi-truck loads of debris from the high school project to the Tazewell County Landfill between June 28, 2017, and July 21, 2017. It also transported 24 loads to a farm owned by Venovich Construction Company. On July 13, 2017, in response to an anonymous tip regarding unlawful dumping, Jason Thorp, an investigator with the IEPA, inspected the farm site. Venovich, the owner of Venovich Construction Company, held a permit for clean construction and demolition debris in order to prevent erosion along the riverbank abutting the property. However, according to Venovich, IronHustler dumped the debris without his knowledge or permission. Venovich was contacted by the IEPA about the dumped materials, and in turn, contacted IronHustler and demanded the debris

2

be removed. The following day, IronHustler discovered by looking at its trucking timesheets that 24 loads of construction debris were taken to the farm site, not the landfill. IronHustler arranged for removal of the debris and its proper disposal at the landfill. On July 17, 2017, IronHustler transported 29 loads of debris from the farm to the landfill.

¶ 5    IronHustler thereafter terminated the employees who had arranged for the open dumping at the farm. IronHustler implemented additional policies to prevent future diversions for unlawful dumping. IronHustler also implemented a service agreement for nonhazardous waste that committed third parties with whom it dealt to reject acceptance of construction debris in violation of the Act. To further rectify the situation, IronHustler paid for the transport from the farm and disposal at the landfill of five more loads than it dumped, paid for the double transport from the job site to the farm and then to the landfill of the original 24 loads and bore the cost of terminating its employees and implementing additional remedial actions.

¶ 6    IronHustler, River City and Venovich Construction Company each received a violation notice from the IEPA on August 21, 2017. The notice informed the parties that they should (1) cease all open dumping at the farm site, (2) remove all unlawfully dumped materials from the site, and (3) submit copies of receipts indicating proper disposal of the construction debris. Venovich reached a settlement with the IEPA and is not a party to this appeal. IronHustler responded in writing to the IEPA's recommendations, informing the agency that it had complied with the recommendations two months earlier. IronHustler proposed a compliance commitment agreement, which the IEPA rejected because of the nature and seriousness of the violations which remained a subject of disagreement between the IEPA and the respondents. The IEPA issued a letter on December 27, 2017, to IronHustler indicating the IEPA inspected the farm site again in November 2017 and determined the site was returned to compliance.

¶ 7        On September 16, 2019, the State filed a seven-count complaint with the Board against IronHustler, River City and Venovich Construction Company on behalf of IEPA. Count I alleged open dumping (415 ILCS 5/21(a) (West 2018)); count II alleged open dumping resulting in litter (*id.* § 21(p)(1)); count III alleged open dumping resulting in waste in standing or flowing waters (*id.* § 21(p)(4)); count IV alleged open dumping of demolition debris (*id.* § 21(p)(7)(i)); count V alleged developing and operating a landfill without a permit (35 Ill. Adm. Code 812.101(a) (2018); 415 ILCS 5/21(d)(1) (West 2018)); count VI alleged developing and operating a landfill in violation of board regulations (415 ILCS 5/21(d)(2) (West 2018)); and count VII alleged waste disposal at an improper site (*id.* § 21(e)). The complaint sought various monetary penalties based on the alleged violations.

¶ 8        The State moved for summary judgment in March 2021 and IronHustler filed a cross-motion for summary judgment in May 2021. On October 7, 2021, the Board granted summary judgment to the State, denied IronHustler's cross-motion for summary judgment, and assessed penalties of $80,000 against IronHustler and $35,000 against River City. IronHustler timely filed its petition. River City filed a late petition for review, which this court denied. River City filed a brief and argued its position in IronHustler's appeal. The State moved to strike River City's brief, which this court initially denied but thereafter granted after vacating the denial order. *People v. IronHustler*, No. 3-21-0518 (Sept. 15, 2022) (unpublished dispositional order). River City is not a party to this appeal.

¶ 9                                            II. ANALYSIS

¶ 10        IronHustler argues that summary judgment was improperly granted to the State, which it maintains failed to establish it violated the Act. According to IronHustler, the State did not prove it dumped waste at the farm site. IronHustler also argues that the Board erred in imposing a

4

monetary penalty. It asserts the penalty was not appropriate where the penalty was imposed for past violations, IronHustler acted at all times in good faith, the penalty was not warranted under the applicable statutory factors, and the amount of the penalty imposed was inappropriate. Finally, IronHustler argues that River City was improperly penalized for IronHustler's actions about which River City was unaware.

¶ 11    Summary judgment is appropriate where the pleadings, depositions, and admissions on file, along with any affidavits, show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2018). When parties file cross-motions for summary judgment, they agree that no genuine issue of material fact exists and that the issue is a question of law. *Prairie Rivers Network v. Pollution Control Board*, 2016 IL App (1st) 150971, ¶ 24. This court reviews an administrative agency's grant of summary judgment *de novo*. *Id.* ¶ 23. On review, this court gives deference to the administrative determination and will only set aside a penalty "if it is clearly arbitrary, capricious or unreasonable." *City of Morris v. Community Landfill Co.*, 2011 IL App (3d) 090847, ¶ 42.

¶ 12    To determine whether to impose a penalty and its amount, the Board looks to the factors in section 33(c) of the Act and all the attendant facts and circumstances that bear on the conduct that is the subject of the complaint. *Modine Manufacturing Co. v. Pollution Control Board*, 193 Ill. App. 3d 643, 648 (1990). The severity of the penalty should bear some relationship to the seriousness of the conduct or infraction. *Id.* at 649. In determining whether to impose a penalty and its amount, good faith or lack of it is a pertinent consideration. *Id.*

¶ 13                    A. IEPA Burden to Establish that "Waste" was Dumped

¶ 14    To begin, IronHustler submits that the IEPA failed to demonstrate that the dumped materials were "[g]eneral construction or demolition debris" or "[w]aste" as defined in the Act.

5

See 415 ILCS 5/3.160(a), 3.535 (West 2018). Accordingly, it maintains, the State failed to carry its burden that it violated the Act, challenging the affidavit of Thorp, the IEPA inspector, which stated that general construction or demolition debris was present at the farm site. IronHustler submits that anything it dumped was permissible clean construction and demolition debris.

> " 'General construction or demolition debris' means non-hazardous, uncontaminated materials resulting from the construction, remodeling, repair, and demolition of *** structures, *** limited to the following: bricks, concrete, and other masonry materials; soil; rock; wood, including non-hazardous painted, treated, and coated wood and wood products; wall coverings; plaster; drywall; plumbing fixtures; non-asbestos insulation; roofing shingles and other roof coverings; reclaimed or other asphalt pavement; glass; plastics that are not sealed in a manner that conceals waste; electrical wiring and components containing no hazardous substances; and corrugated cardboard, piping or metals incidental to any of those materials ***." 415 ILCS 5/3.160(a) (West 2018).

Section 3.535 defines " 'Waste' " as:

> "any garbage *** or other discarded material, including solid, liquid, semi-solid, or contained gaseous material resulting from industrial [and] commercial *** operations, and from community activities ***." *Id.* ¶ 3.535.

¶ 15    Thorp's affidavit was introduced by the IEPA in support of its claim of unlawful dumping. He visited both the dump site at the farm and the high school project site on July 17, 2017. Thorp averred that the demolition debris he discovered at the farm contained "electrical wire, metal radiators, wood, rebar, wire conduit, metal sheeting, metal angle iron, painted brick, plywood, metal studs, metal pipe, painted concrete, slag, and ceramic tile." He further attested that he reinspected the dump site on November 16, 2017, that the construction debris had been removed,

and that IronHustler submitted receipts showing it properly disposed of the debris at a landfill on July 17, 2017. The IEPA submitted photographs taken by Thorp at both the farm and the high school demolition/construction project. The farm photographs depicted the dumped construction debris and Thorp described the type of debris shown in the photos as attested in his affidavit. Photographs from the high school site showed construction debris similar to that found at the farm. Photographs of both sites showed excavators bearing IronHustler markings. In its answers to interrogatories, IronHustler stated that the operator of the excavator seen at the farm was its employee and that the excavator had been transported to the farm by another of its employees.

¶ 16 Other than IronHustler's denials, it did not offer any proof to rebut the IEPA's evidence of open dumping of waste. Its inspector documented the debris with photographs, which aligned with his attestations that the materials dumped at the farm consisted of construction and demolition debris and constituted waste. We conclude that there is no genuine issue of material fact that the debris deposited at the farm site was waste and that the IEPA did not carry its burden to establish violations of the Act.

¶ 17 B. Assessment of Penalty

¶ 18 IronHustler disputes the propriety of the monetary penalty assessed against it, arguing that it should not be penalized for past violations, that imposition of the penalty violates the factors set forth in section 33(c) of the Act, and that River City should not be monetarily penalized because it played no role in the open dumping.

¶ 19 1. Past Violations

¶ 20 IronHustler argues that it was improperly assessed penalties for "wholly past" violations of the Act, which it readily corrected, and demonstrated that it exercised good faith in complying with the Act. It observes that the dumping took place on July 7, 2017; it was notified about it on

7

July 13, 2017; removed the debris on July 17, 2017; and the site was reinspected and found in compliance on November 16, 2017. The IEPA did not pursue its action against it until September 16, 2019, when the State filed a complaint on its behalf. According to IronHustler, the penalties cannot serve to enforce the Act but merely punishes it and discourages others from acting in good faith to remedy Act violations.

¶ 21    There is no bar to the imposition of penalties for past violations of the Act. See *Modine Manufacturing Co*, 193 Ill. App. 3d at 648 ("we decline to hold categorically that penalties may not be imposed for wholly past violations"). In *Modine*, the appellant challenged the $10,000 penalty imposed against him for violating the Act, arguing the penalty was not necessary to aid in the Act's enforcement. *Id.* at 647. The reviewing court rejected the appellant's argument that because the violation had ceased before the complaint against it was filed, the monetary penalty would not aid in enforcing the Act. *Id.* at 648. However, the court found under the applicable statutory factors that a maximum penalty was not warranted and reduced the penalty to $1000. *Id.* at 650. The appellant in *Modine* worked for several years with the IEPA to rectify its violations of the Act, cooperated fully with the agency, and expended substantial funds to correct the problem. *Id.* In contrast, although IronHustler quickly cleaned up the illegal dump site at the farm and transported the debris to a landfill prior to the complaint being filed, the efforts were by compulsion and without good faith. IronHustler's compliance with the Act took place only when it got caught dumping illegally. The fact that IronHustler's excavator was at the farm site and more than 20 loads of debris were dumped there indicate that the illegal dumping was not small scale and the result of the normal operations of business, as in *Modine*.

¶ 22    The cases on which IronHustler relies for the proposition that past violations should not be penalized are distinguished. In *CPC International, Inc. v. Illinois Pollution Control Board*, 24 Ill.

8

App. 3d 203, 208 (1974), the reviewing court found the $15,000 penalty arbitrary and excessive where the violations were not deliberate and the violator quickly corrected the problem. In *Southern Illinois Asphalt Co., Inc. v. Pollution Control Board*, 60 Ill. 2d 204, 209 (1975), the court found monetary penalties were not warranted under the Act, as the violations had ended long before the IEPA brought its enforcement actions and there were significant mitigating circumstances. In *Park Crematory, Inc. v. Pollution Control Board*, 264 Ill. App. 3d 498, 506 (1994), the reviewing court found the monetary penalty punitive in that it "in no way aid[ed] in the enforcement of the Act," noting the violator misunderstood the permit requirements, cooperated promptly with the IEPA, and corrected the violations prior to the complaint.

¶ 23    In *City of Moline v. Pollution Control Board*, 133 Ill. App. 3d 431, 434 (1985), this court reversed the monetary penalty imposed on *Moline* for its violations of the Act, finding that the monetary penalty was purely punitive. *Moline* worked extensively with the IEPA to resolve the problems, took its own initiatives to further abate the problems and ultimately operated in compliance. *Id.* at 432-33. This court reasoned a monetary penalty was inappropriate for two significant reasons. *Id.* at 434. First, it considered the IEPA's complaint unnecessary, as *Moline* had been working with the IEPA to resolve the issues. *Id.* Secondly, it noted that the burden of the penalty would be borne by the taxpayers, who were already saddled with the increased costs associated with *Moline*'s measures to comply with the Act. *Id.*

¶ 24    In contrast, here, the dumping was deliberate, IronHustler's employees were aware of the dumping, there were no long-term attempts or cooperation with the IEPA to correct violations, there were no mitigating circumstances, and IronHustler only cleaned up the dump site after the open dumping was discovered. Furthermore, in the cases presented by IronHustler, the violations that had been remedied were long-term violations, not a single illegal dumping. The monetary

9

penalties were rejected because they did nothing to enforce the Act, whereas here, the penalty serves, in part, to force future compliance. While IronHustler cleaned up the dump site in quick fashion, the penalty was imposed because the dumping took place in the first place.

¶ 25                                    2. Assessment of Penalty

¶ 26         IronHustler argues that the PCB erred when it imposed an $80,000 penalty. According to IronHustler, the section 33(c) factors do not support imposition of a penalty.

¶ 27         To determine whether to impose a penalty, the PCB is guided by the considerations set forth in section 33(c) of the Act (415 ILCS 5/33(c) (West 2018)). *Southern Illinois Asphalt Co.*, 60 Ill. 2d at 207-08. Section 33(c) provides as follows:

> "(c) In making its orders and determinations, the Board shall take into consideration all the facts and circumstances bearing upon the reasonableness of the emissions, discharges, or deposits involved, including, but not limited to:
>
>> (i) the character and degree of injury to, or interference with the protection of the health, general welfare and physical property of the people;
>>
>> (ii) the social and economic value of the pollution source;
>>
>> (iii) the suitability or unsuitability of the pollution source to the area in which it is located, including the question of priority of location in the area involved;
>>
>> (iv) the technical practicability and economic reasonableness of reducing or eliminating the emissions, discharges or deposits resulting from such pollution source; and
>>
>> (v) any subsequent compliance." 415 ILCS 5/33(c)(i)-(v) (West 2018).

¶ 28         As to the first factor, IronHustler submits that the debris it dumped was solid waste and presumably less harmful than if it had dumped liquid waste. While the fact the waste was solid

allowed an easier clean up, it does not diminish that IronHustler engaged in unlawful open dumping of construction and demolition debris along the banks of and in a river. The dumped waste included electrical wire, metal radiators, wood, rebar, wire conduit, metal sheeting, metal angle iron, painted brick, plywood, metal studs, metal pipe, painted concrete, slag, and ceramic tile. IronHustler maintains the waste only remained for a short period of time and did not leave behind any contamination; however, the mere dumping of these items interfered with or threatened the general welfare and health of the people. See *Toyal America, Inc. v. Illinois Pollution Control Board*, 2012 IL App (3d) 100585, ¶ 40 (finding violation where unlawful emission "caused, allowed, or threatened air pollution") (citing 415 ILCS 5/9(a) (West 2018)).

¶ 29    The second factor weighs in favor of penalizing IronHustler, as found by the Board. The construction of a new high school wing has social and economic value to the public but the dumping of debris from the construction project does not.

¶ 30    The third factor, the suitability of the pollution source, also weighs in favor of a penalty. The debris was dumped along and in the Mackinaw River. The dump site was not a permitted landfill. IronHustler argues that the dumping was orchestrated by rogue employees; however, this fact does not relieve IronHustler of responsibility. See *Gonzalez v. Pollution Control Board*, 2011 IL App (1st) 093021, ¶ 33 (standard is whether the violator "has the capability of control over the pollution"). Nor do its claims of proactive efforts to ensure future compliance as this violation is not the first for IronHustler, termination of rogue employees notwithstanding.

¶ 31    The fourth factor is whether reducing or eliminating the pollution was technically practicable and economically reasonable. All IronHustler needed to do was transport the waste to the landfill as it did with the other loads from the high school project. The landfill was permitted

11

and dumping the debris there was both practicable and reasonable. This factor weighs in favor of a penalty.

¶ 32    The fifth and final factor is any subsequent compliance. The Board found this factor favored IronHustler and the record supports the finding.

¶ 33    We conclude that the Board did not err in finding on these undisputed facts that IronHustler violated the Act, that summary judgment was proper, and that a penalty was warranted. The majority of the section 33(c) factors support the PCB's finding that penalties were appropriate.

¶ 34                                  3. Amount of Penalty

¶ 35    The next inquiry is the amount of the penalty, as determined by the section 42(h) factors (415 ILCS 5/42(h) (West 2018)). IronHustler challenges the monetary penalty of $80,000 and the penalty against River City of $35,000, arguing the PCB's "general analysis" of the factors was insufficient and a proper analysis would conclude that the amount of the penalties assessed was unwarranted.

¶ 36    Section 42(h) provides:

> "(h) In determining the appropriate civil penalty to be imposed***, the Board is authorized to consider any matters of record in mitigation or aggravation of penalty, including, but not limited to, the following factors:
>
> (1) the duration and gravity of the violation;
>
> (2) the presence or absence of due diligence on the part of the respondent in attempting to comply with requirements of this Act and regulations thereunder or to secure relief therefrom as provided by the Act;

12

(3) any economic benefits accrued by the respondent because of delay in compliance with requirements, in which case the economic benefits shall be determined by the lowest cost alternative for achieving compliance;

(4) the amount of monetary penalty which will serve to deter further violations by the respondent and to otherwise aid in enhancing voluntary compliance with this Act by the respondent and other persons similarly subject to the Act;

(5) the number, proximity in time, and gravity of previously adjudicated violations of this Act by the respondent;

(6) whether the respondent voluntarily self-disclosed, ***non-compliance to the Agency;

(7) whether the respondent has agreed to undertake a 'supplemental environmental project', which means an environmentally beneficial project that a respondent agrees to undertake in settlement of an enforcement action brought under this Act, but which the respondent is not otherwise legally required to perform; and

(8) whether the respondent has successfully completed a Compliance Commitment Agreement under subsection (a) of Section 31 of this Act to remedy the violations that are the subject of the complaint." 415 ILCS 5/42(h)(1)-(8) (West 2018).

¶ 37    The first factor, the duration and gravity of the violation, was found to be neutral by the Board. It noted that the open dumping was discovered by the IEPA inspector on July 13, 2017, and the material was "promptly" removed on July 17, 2017. When the dump site was inspected again on November 16, 2017, the debris had been removed. According to the Board, the limited

duration of the open dumping was counterbalanced by the gravity of the violation. This factor serves to aggravate the penalty amount.

¶ 38    The next factor is IronHustler's due diligence in complying with the Act and its regulations. IronHustler acted with diligence in removing the debris and bringing the site into compliance with the Act. The Board's finding that this factor favored IronHustler is supported by the record. This factor is mitigating.

¶ 39    Whether there were any economic benefits to IronHustler as a result of its compliance delay is the third factor. The Board considered this factor neutral, noting that IronHustler paid to clean the farm site and dump the debris at a permitted site and that the State did not provide information that IronHustler enjoyed any economic benefits from its noncompliance.

¶ 40    The next factor to be considered is the amount of penalty which will serve to deter further violations and enhance voluntary compliance. The Board found this factor significant, calculating the amount of the penalty to "serve to deter future violations" by IronHustler and others. Assessment of a substantial monetary penalty would serve to urge potential violators like IronHustler to comply with the Act initially, rather than after violating it. See *Wasteland, Inc. v. Illinois Pollution Control Board*, 118 Ill. App. 3d 1041, 1055 (1983) (penalty to deter "those who blatantly disregard applicable rules and regulations [and] others who might consider cutting corners at the expense of the environment"). This is an aggravating factor.

¶ 41    Whether there were previously adjudicated violations is the next factor and it weighs against IronHustler as found by the Board. It had prior adjudicated violations and penalties: in 2013, a $10,000 penalty for open dumping at a nonpermitted site, and in 2019, a $3000 penalty for open dumping resulting in litter and the deposit of construction debris. This factor aggravates the penalty as to IronHustler.

14

¶ 42 The next factor, whether the respondent voluntarily self-disclosed, also aggravates the penalty, as the Board found. IronHustler did not self-disclose, and contrary to its claims that it was unaware of the violation until notified by the IEPA, the debris was transported to and dumped at the site by IronHustler employees using IronHustler equipment.

¶ 43 Finally, the Board stated that the record contained no evidence regarding the seventh and eighth factors, whether IronHustler agreed to a supplemental environmental project or completed a compliance commitment agreement, and apparently found these factors neutral.

¶ 44 We find the undisputed material facts support the Board's analysis of the section 42(h) factors and agree that imposition of an $80,000 penalty was appropriate under the applicable factors.

¶ 45                                4. River City's Liability

¶ 46 Finally, IronHustler maintains that the penalty against River City was in error because River City did not "cause or allow" a violation of the Act. As discussed above, River City failed to timely appeal the Board's decision and IronHustler lacks standing to present an argument on River City's behalf.

¶ 47 Standing "requires only some injury in fact to a legally cognizable interest." *Greer v. Illinois Housing Development Authority*, 122 Ill. 2d 462, 492 (1988). To satisfy the standing requirement, a party must establish that its injury is distinct and palpable, can fairly be traced to the actions of the defendant, and the grant of requested relief is "substantially likely" to prevent or redress the party's claimed injury. *Messenger v. Edgar*, 157 Ill. 2d 162, 170 (1993). "A party must assert its own legal rights and interests, rather than assert a claim for relief based upon the rights of third parties." *Powell v. Dean Foods Co.*, 2012 IL 111714, ¶ 36.

¶ 48    As we determined in granting the State's motion to strike River City's brief, we lack jurisdiction to review the Board's findings and penalty against it. River City failed to timely file its petition for review of the Board's decision and IronHustler's petition for review referenced only the finding and penalty against River City. See *IronHustler*, No. 3-21-0518. We also reject IronHustler's assertion that it has standing because its contract with River City obligates it to River City for any claims arising from IronHustler's work. Thus, IronHustler asserts, any penalty imposed against River City is IronHustler's responsibility to pay, and thus, it has a valid economic interest in River City's penalty and has standing to challenge it. Despite IronHustler's contractual obligation, it cannot seek relief based on River City's rights.

¶ 49    In summary, we find that there is no genuine issue of material fact that IronHustler violated the Act by unlawfully dumping waste at an unpermitted site. The Board did not err in granting summary judgment in favor of the State and denying IronHustler's cross-motion for summary judgment.

¶ 50                                III. CONCLUSION

¶ 51    For the foregoing reasons, the judgment of the Pollution Control Board is affirmed.

¶ 52    Affirmed.